UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ZACHARY PETERSEN, | Case No. 1:21-cv-00097-AKB |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER** |
| v. | |
| UNITED STATES OF AMERICA, | |
| Defendant. | |

Plaintiff Zachary Petersen filed this action against the United States of America under the Federal Tort Claims Act, 28 U.S.C. § 1346. He seeks to recover damages related to personal injuries he sustained in a vehicle collision. (Dkt. 8). Petersen retained Drs. Craig Beaver and David Orlowski as expert witnesses. Pending before the Court is Defendant's *Daubert* Motion to Exclude the Expert Reports and Testimony of Drs. Craig Beaver and David Orlowski. (Dkt. 47). The Court finds oral argument would not significantly aid its decision-making process and decides the motions on the parties' submissions. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B); *see also* Fed. R. Civ. P. 78(b) ("By rule or order, the court may provide for submitting and determining motions on briefs, without oral hearings."). For the reasons set forth below, the motion is denied.

## I. BACKGROUND

On January 8, 2018, Petersen was injured in a vehicle collision. (Dkt. 8 at p. 2). The collision occurred when a United States employee, operating a vehicle owned by the United States, failed to yield to and struck an oncoming vehicle in which Petersen was a passenger. (*Id*.). Law enforcement cited the United States employee, who was found guilty of failing to yield. (*Id*.).

**MEMORANDUM DECISION AND ORDER - 1**

Thereafter, Peterson filed a complaint and then an amended complaint against the United States for personal injuries. (Dkts. 1, 8).

In support of his claim, Petersen disclosed Drs. Beaver and Orlowski as expert witnesses. (Dkt. 47 at p. 1). Dr. Orlowski is a vocational economic consultant, who Petersen employed to conduct an independent vocational economic assessment. In conducting this assessment, Dr. Orlowski reviewed Petersen's medical records; consulted with Dr. Karl Zarse, Petersen's pain management physician; and employed the Rehabilitation Plan, Access to Labor Market, Placability, Earning Capacity, Labor Force Participation (RAPEL) methodology. Considering two hypothetical scenarios for Petersen's future employment—parttime sedentary work and total disability—Dr. Orlowski opined the present value of Petersen's total economic damages was between $5,111,295 and $5,656,503. (Dkt. 48-3 at p. 44).

Dr. Beaver is a licensed psychologist, who Petersen retained to conduct a neuropsychological examination. (Dkt. 48-2 at p. 3). In conducting this examination, Dr. Beaver interviewed Petersen and reviewed "a limited number of medical records," and Petersen underwent a neuropsychometric test battery. (*Id.*) Based on this information, Dr. Beaver opined on four "diagnostic considerations" in his report, including whether Petersen suffered from a neurocognitive disorder, major depression disorder, somatic symptom disorder, and posttraumatic stress disorder (PTSD). (*Id.* at pp. 13-15).

The United States moves under Rule 702 of the Federal Rules of Evidence to exclude the testimony of Drs. Beaver and Orlowski, asserting their opinions "are speculative, unreliable, bias [sic], untested, and based on unrealistic assumptions and unsound methodology." [1] (Dkt. 47).

---

[1]     Drs. Beaver and Orlowski provided expert witness disclosures under Rule 26(a)(2)(B) of the Federal Rules of Civil Procures, i.e., their signed reports with supporting documentation. Petersen attaches these disclosures and Dr. Beaver's curriculum vitae to his counsel's declaration in support of his response to the United States' Rule 702 motion. (Dkts. 48-1 through 48-4). In

**MEMORANDUM DECISION AND ORDER - 2**

## II. LEGAL STANDARD

Rule 702 governs the admissibility of expert testimony; it provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

Fed. R. Evid. 702(a)-(d).

The district court's role in applying Rule 702 is to be a gatekeeper. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993). In that role, the court considers both the relevance and reliability of the proffered evidence. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010) (citation omitted); *accord Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022). "To carry out its gatekeeping role, a district court must find that an expert's testimony is reliable—an inquiry that focuses not on 'what the experts say,' or their qualifications, 'but what

---

reply, the United States "objects" to the reports and the CV because they lack foundation, are unauthenticated, and hearsay. (Dkt. 49 at p. 2). By providing the Court with copies of these materials in opposition to the United States' Rule 702 motion, however, Petersen is not proffering the materials in evidence. Rather, Petersen properly filed the materials in opposition to the United States' motion. The Court's review of the materials is essential for determining preliminary evidentiary issues like whether the experts are qualified, what opinions they have disclosed, and whether those opinions comport with Rule 702. The United States is correct, however, that Petersen's prior filings in the record of his expert witness disclosures and other discovery materials (*see, e.g.*, Dkts. 26, 27) were contrary to the Court's local rules. *See* Dist. Idaho Loc. Civ. R. 5.4 (providing discovery documents must not be filed with Court unless ordered).

basis they have for saying it.'" *United States v. Holguin*, 51 F.4th 841, 854 (9th Cir. 2022) (quoting

*Daubert v. Merrell Dow Pharms.*, 43 F.3d 1311, 1316 (9th Cir. 1995)), *cert. denied*, 143 S. Ct.

2509 (2023). Expert opinion evidence is reliable when such knowledge "has a reliable basis in the

knowledge and experience of the relevant discipline." *Daubert*, 509 U.S. at 592.

### III. ANALYSIS

In support of its Rule 702 motion, the United States primarily asserts Petersen's experts

are unreliable because their opinions are not based on sufficient facts or data.[2] In opposition,

Petersen counters that "an expert need only show that they have the qualification, training,

background, or experience necessary on which they have a foundation to form an opinion, while

the facts argued in a case—unless speculative—go to the weight of the testimony by the finder of

fact." (Dkt. 48 at p. 4). To the extent this argument suggests that an expert's proponent need only

establish the expert's qualifications and that the expert's basis and methodologies are questions of

weight for the jury, that suggestion is incorrect. Rule 702 clarifies the proponent of expert

testimony must meet all of Rule 702's substantive standards for admissibility by a preponderance

of evidence.

The current version of Rule 702 corrects some courts' prior, inaccurate application of

Rule 702. As the Committee Notes to the 2023 Amendment state, "many courts have held that the

critical questions of the sufficiency of an expert's basis, and the application of the expert's

methodology, are questions of weight and not admissibility. These rulings are an incorrect

application of Rules 702 and 104(a)." Fed. R. Evid. 702 Comm. Note (1) (effective Dec. 1, 2023).

"The Committee concluded that emphasizing the preponderance standard in Rule 702 was made

---

[2]     Although the United States asserts Petersen's experts rely on "unsound methodology," it
does not support this assertion with any substantive argument. Moreover, the record does not
indicate either Dr. Beaver or Dr. Orlowski employed an unreliable methodology.

**MEMORANDUM DECISION AND ORDER - 4**

necessary by the courts that have failed to apply correctly the reliability requirements of that rule." *Id*. Rule 702(d) also emphasizes each expert opinion must stay within the bounds of what can be concluded from a reliable application of the expert's basis and methodology. Fed. R. Evid. Comm. Note (2) (discussing amendment of Rule 702(d) to state "the expert's opinion [must] reflect[] a reliable application of the principles and methods to the facts of the case"); *see also United States v. Hermanek*, 289 F.3d 1076, 1093 (9th Cir. 2002) ("It is well settled that bare qualifications alone cannot establish the admissibility of scientific expert testimony."). Accordingly, the Court considers whether the opinions of Dr. Beaver and Dr. Orlowski meet Rule 702's standards for admissibility by a preponderance of evidence.

## A.     Dr. Orlowski's Opinions

The United States challenges Dr. Orlowski's testimony regarding Petersen's damages as inadmissible. In evaluating Petersen's damages, Dr. Orlowski projected "the impact of [Petersen's] severe spinal injuries on his loss of earning capacity, future medical care costs, diminished capacity for performing his household services, and exertional exercise disability valuation." (*Id.* at Dkt. 48-3 at p. 1). In formulating his opinions, Dr. Orlowski considered Petersen's medical records, Dr. Zarse's assessments of Petersen's functional capacity, and Petersen's self-reported conditions. (Dkt. 48-3 at pp. 4-34). Dr. Orlowski describes these conditions as indicating Petersen "has pronounced limitations and a greatly diminished capacity due to short-term memory problems, mood swings, cognitive fatigue, and multi-tasking difficulties," headaches, and "4 or 5 hours of limited, focused ability." (*Id*. at p. 27).

Based on this and other information articulated in his report, Dr. Orlowski estimated Petersen's economic losses because of the collision. In doing so, Dr. Orlowski used a vocational methodology, including relying on U.S. Department of Labor reports, to posit two hypothetical

**MEMORANDUM DECISION AND ORDER - 5**

scenarios for Petersen's future employment in lieu of his prior employment as a "foreman flooring specialist." (*Id.* at pp. 33-34). These scenarios are that Petersen can perform parttime sedentary work or, alternatively, that he is totally disabled. (*Id.*) Further, Dr. Orlowski calculates Petersen's life expectancy, the cost for him to replace his household services, and his exertional disability. (*Id.* at pp. 34-43). Based on these factors, Dr. Orlowski estimates Petersen's total, present value economic damage to be between $5,111,295 to $5,656,503. (*Id.* at p. 44).

Challenging Dr. Orlowski's opinions, the United States argues his "report assumes a fictional version of [Petersen] that was fed to him." (Dkt. 47-1 at p. 8). For example, the United States complains Dr. Orlowski did not meet Petersen in person; "assumed an upward career trajectory and lifestyle that is pure fantasy"; and misstates Petersen's educational background, his work history, and his reason for quitting work. (*Id.* at pp. 8-10). In other words, the United States challenges the sufficiency of the facts and data on which Dr. Orlowski bases his assumptions. *See* Fed. R. Evid. 702(b) (requiring testimony to be based on "sufficient facts or data").

An expert, however, may rely on assumptions when formulating opinions. Fed. R. Evid. 702, advisory committee notes to 2000 amendments ("The language 'facts or data' is broad enough to allow an expert to rely on hypothetical facts that are supported by the evidence."). *See also Unknown Party v. Arizona Bd. of Regents*, 641 F. Supp. 3d 702, 727 (D. Ariz. 2022). Generally, a disagreement with an expert's assumptions does not provide a basis for excluding his testimony. *Id.* The Ninth Circuit has ruled that "Rule 702's 'sufficient facts or data' element requires foundation, not corroboration." *Elosu*, 26 F.4th at 1025.

Consistent with the court's gatekeeping functions, Rule 702 instructs a district court to determine whether an expert had sufficient factual grounds on which to draw his conclusions. *Elosu*, 26 F.4th at 1025-26. A court may conclude there is simply too great an analytical gap

**MEMORANDUM DECISION AND ORDER - 6**

between the data and the opinion proffered, but "Rule 702 does not license a court to engage in freeform factfinding, to select between competing versions of the evidence, or to determine the veracity of the expert's conclusions at the admissibility stage." *Elosu*, 26 F.4th at 1026. Rather, "[s]haky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof." *Primiano*, 598 F.3d at 564.

In this case, Dr. Orlowski's opinions are founded on sufficient facts and data as articulated in his report. That Dr. Orlowski's assumptions may be based on Petersen's exaggerations or hyperbolic characterizations of his symptoms as reported to Dr. Orlowski and Dr. Zarse very well may be the case. The Court, however, cannot find the facts and data on which Dr. Orlowski relied are wholly speculative, unfounded, or not credible. Accordingly, the Court denies the United States' motion to exclude Dr. Orlowski's testimony.

**B.      *Dr. Beaver's Opinions***

The United States also challenges Dr. Beaver's testimony regarding neurological disorders as inadmissible. In formulating his opinions, Dr. Beaver interviewed Petersen and reviewed "a limited number of medical records," and Petersen underwent a neuropsychometric test battery. (Dkt. 48-2 at p. 3). Based on this information, Dr. Beaver opined on four "diagnostic considerations" in his report, including whether Petersen suffered from a neurocognitive disorder, major depression order, somatic symptom disorder, and PTSD. (Dkt. 48-2 at pp. 13-15).

The United States challenges Dr. Beaver's opinions regarding each of these disorders. In support, it argues these opinions are based on Petersen's "subjective reporting which testing proves were exaggerated." (Dkt. 47-1 at p. 4). For example, the United States notes Dr. Beaver's report states that Petersen completed the Structured Inventory of Malingered Symptomatology (SIMS) test designed to detect "symptom magnification"; "[s]cores above 14 are considered reflective of

patients who are overstanding their symptomatology"; and Petersen "had a score of 29, indicating significant symptom magnification." (Dkt. 48-2 at p. 11-12). Further, the United States notes Dr. Beaver repeatedly expressed "caution" in interpreting results because of Petersen's tendency to exaggerate his symptoms. (*Id.* at p. 12).

The Court construes the United States' motion as seeking to exclude Dr. Beaver's testimony about each of the four disorders on which his report opines. At least two of these opinions, however, are essentially self-excluding. First, regarding PTSD, Dr. Beaver opines Petersen "has many elements of [PTSD], but in my opinion, he does not meet the full criteria." (*Id.* at p. 14). Because Dr. Beaver opines Petersen does not have PTSD, he obviously cannot testify to the contrary at trial.

Second, regarding a neurocognitive disorder, Dr. Beaver opines, "I cannot rule in or rule out lingering neurocognitive difficulties secondary to a mild traumatic brain injury. . . . [A] definitive diagnosis about this [condition] is not possible." (*Id.*) Again, having concluded he is unable to opine Petersen has a neurocognitive disorder, Dr. Beaver cannot testify to the contrary at trial.

Dr. Beaver's opinion regarding major depressive disorder is more definitive. Regarding that disorder, Dr. Beaver opines that Petersen "is experiencing major depression with anxious distress." (*Id.*) Dr. Beaver is unable, however, to quantify the severity of that disorder. (*Id.*). Indeed, Dr. Beaver concedes in his report that he has difficulty gauging the severity of Petersen's depression because of Petersen's "tendency to magnify his symptomatology." (*Id.*). Based on Dr. Beaver's disclosure, he may testify Petersen suffers from major depressive disorder with anxious distress. He may not, however, testify regarding the severity of that disorder. For example,

he may not testify it is "moderate," as stated in the title of the subsection of his report discussing major depressive disorder.

Finally, Dr. Beaver may testify that Petersen has somatic symptom disorder—which the Court understands to mean Petersen tends to focus, perhaps excessively, on his symptoms. In support of his opinion that Petersen suffers from a somatic symptom disorder, Dr. Beaver notes:

> Petersen presents with a number of somatic symptoms that cause him a great deal of distress.  This predominantly involves pain, but he also has other symptoms. He has a great deal of anxiety about his future. He spends a lot of time worrying and thinking about the seriousness of his symptoms and what will occur.

(*Id.*) Dr. Beaver definitively and unequivocally opines Petersen "meets the criteria for somatic symptom disorder." (*Id.*)

The Court finds sufficient facts and data support Dr. Beaver's opinions as disclosed in his report regarding whether and to what extent Petersen suffers from a neurocognitive disorder, a major depressive disorder, a somatic symptom disorder, and PTSD and whether the collision caused those disorders. Accordingly, the Court rules Dr. Beaver may testify to the opinions as disclosed in his report and denies the United States' motion to exclude his testimony.

In summary, both Drs. Beaver and Orlowski are qualified experts in their fields, who have applied broadly accepted scientific principles to conduct their analyses and to reach their opinions. The Court finds their opinions are based on a foundation of sufficient facts and data. To the extent the United States disagrees with their assumptions and the credibility of the facts underlying those assumptions, the Court may not engage in factfinding, select competing version of the evidence, or determine veracity. If, however, Petersen fails to produce evidence sufficient to support an expert's assumptions at trial, the United States may again move to exclude that opinion as unreliable. *See Nelson v. Costco Wholesale Corp.*, No. CV-20-00250-PHX-MTL, 2022 WL 1638838, at *3 (D. Ariz. May 24, 2022) (denying motion to exclude without prejudice). Otherwise,

the United States should challenge the validity and the credibility of Petersen's self-reported symptoms or other purportedly incorrect information underlying the expert's opinions on cross-examination. *Primiano*, 598 F.3d at 564 ("Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof.").

**IV. ORDER**

**IT IS ORDERED that:**

Defendant's Daubert Motion to Exclude the Expert Reports and Testimony of Drs. Craig Beaver and David Orlowski (Dkt. 47) is **DENIED** without prejudice.

DATED: March 14, 2024

Amanda K. Brailsford
U.S. District Court Judge

**MEMORANDUM DECISION AND ORDER - 10**